Opinion of the court, overruling the petition for are-hearing,
by Chief J ustice Bibb.
The petition supposes that the bill does not contain a charge of usury. This is a mistake of the petitioner, and not a mistake of the court. The bill states that the complainant was in great need of money; to raise it he borrowed of Rodes between nine hundred and one thousand, dollars, but he is confident it did not exceed one thousand dollars, and for that sum he agreed to pay said Rodes twelve hundred and sixteen dollars, in one year; to secure the payment of that sum of $1,216 in one year, the three notes were assigned, amounting to eighteen hundred dollars, and Rodes gave the obligation to return the notes if the sum of $1216 was paid in one year. These facts are set forth and charged in the bill, clearly and positively. From these facts the legal conclusion is, that the transaction was usurious. It does amount to a charge of usury of fifteen per cent and more, for the year, and usury upon usury, by way of enormous penalty. All the constituents of usury are charged. The necessity of the complainant, the lending and borrowing, the sum actually borrowed and lent, the sum reserved upon the loan for the year; the assignment of the three notes by way of security for tbe loan and profit so reserved, and the intention of the transaction as a security and pledge for repayment of the sum of principal and profit, are distinctly and specifically stated, in language nqt *475 to be misunderstood nor doubted. Having stated the facts from whence usury followed as a legal conclusion, it was not necessary in a bill in equity, to charge those legal deductions, they belong to the court. Legal deductions or conclusions without- the facts on which they are based, would be bad pleading; but facts from which certain legal and equitable conclusions must inevitably follow, are sufficient in equity pleadings, although the libellant, or complainant, his attorney, -proctor or solicitor, shall omit to state the legal or equitable conclusions from 'those facts. After the bill had so distinctly set out the facts, it was not necessary to allege- that twelve hundred and sixteen dollars for the loan,and forbearance for one year, of one thousand dollars,, was more than legal interest. It was unnecessary to-aver that the law allowed but six per cent;; it was unnecessary to aver that twelve hundred and sixteen were more than one thousand and sixty; that, fifteen or twenty are more than six, or that sixty are- not two hundred and sixteen. The petition is founded upon the absence of the words, “usury,” “corruptly agreed,” “unlawful interest,” “fifteen per cent” or upwards. A court of equity does not require the pleadings to be technically nice and formal. Chancellors regard things more than names, substance more than form. They try no indictment against a trope, receive no special plea to a metaphor, reject no complaint or defence for lacle of a pleonasm, sustain no demurrer for want of form.' They withdraw the veils and cobwebs set in modo and forma, they look at the very deeds of men.
In pleadings in equity it-is sufficient to state the facts relied on, .without the use of the technical words which signify the legal consequences of the matter, stated, as unlawfully, and usuriously, and corruptly agreed.
Suppose a demurrer to this bill, which so. clearly states the contract of lending and borrowing; the principal lent; the profit reserved; the time for which the loan was made; tire security for payment of the sum borrowed, with the excessive gain, fortified by a penalty if payment be not made to the day. Suppose the demurrer to assign for cause— First: For that the hard name of “corrupt agreement,” is not applied — Secondly: For that the proper surname, title and addition “Usury” is not superadded — Thirdly: Because the profit reserved, is stated in gross, and not by its exact, ratio, by way *476 of per centage, in integrals and fractions, upon every hundredth part of the principal sum lent. Such causes of demurrer might excite merriment, but could not command serious attention. The chancellor would pass by such objections and look to the substance of the transaction stated in the bill; at the acts and deeds of the parties, and the legal and equitable conclusions to be drawn therefrom; disregarding the names, or nicknames, by which the one party or the other had chosen to call or miscall them.
Modo ofstattef of*1™^' |)lo!ulings ' and facts of tlToofnion delivered.
The opinion of the court to which the petition {ias been presented, does not profess to copy the cbarges in the bill literatim and verbatim. The object in view was, to make such a general statement as would explain the principles decided by the court- The bill having stated the profit reserved, by reference to the sum loaned, and the whole sum to be re-paid; the exact ratio of profit, or rate of interest was not necessary to the understanding of the principles of the decision. The rate of interest calculated upon the facts stated, amounted to fifteen per cent and more; but from the prayer of the bill and the relief given thereupon, the precise ratio of profit and excess, above legal interest was of no importance, the complainant having asked only for relief for the surplus above $1216; with interest thereon, allowed by law subsequent to the time fixed by the contract for re-payment. The bill does therefore, in substance and effect, clearly charge tiic transaction as usurious, as a loan and security for the loan, at the usury of'fifteen per cent, and more; not by the mere names of usury, and corrupt agreement, and exact decimal proportions of the rate of interest, but by stating the facts, positively and clearly; from whence those conclusions necessarily follow, and by praying relief from them. Should a painter draw a faithful and striking likeness, in quantity of superficies, lineaments and proportions, could the fidelity, meaning and consequence of the representation be denied, because the artist had not superadded, “this is the Bear.” The mistake is not with the court as supposed in the petition.
The case of Brown and Heard distinguished from the present.
The case of Brown vs. Heard, (3 Marsh. 390,) is distinguised from the present, in very important particulars. Heard stated by his bill, that he borrowed fifty dollars, and that as a pledge or security for the re-payment of that sum, he, with his securities, executed the obligation for the delivery of seventy-five barrels of corn, at the end of twelve months. Upon this obligation, a judgment at law had been rendered for $ 150, in damages. But the bill did not charge, that any profit or interest whatever, had been reserved or intended to he secured. On the contrary, the bill charges, that the security or pledge was given for the return of the sum borrowed; not even legal interest, no interest or profit, whatever was included, or reserved to be paid at the end of the year to redeem the pledge. The value of the corn at the date of the contract is not alleged; no fact is charged, from which the legal conclusion of usury could be drawn. The proof, however, tended to raise a presumption that the obligation was intended to secure to Brown a greater sum than the legal rate of interest, would have amount ed to. The court said, “considered in this point of view, the contract must unquestionably be deemed void.” But the court refused relief in that case, because the complainant did not prove bis case as stated, and proof of that not stated, cannot be the ground of relief. In that case, the court said if it were intended to secure to Brown more than the legal rate of interest, the contract would be void. But that fact was not alleged by the bill; no reservation of interest or profit Was charged, on the contrary, the interest as charged was lawful. But in Bush’s case, the unlawful gain and reservation of interest and profit exceeding the legal rate, is distinctly stated and charged. If Heard had charged in his bill that not more than fifty dollars were lent and borrowed; that sixty dollars were to be paid therefor in one year; that to secure that sum of sixty dollars, a ■writing was given for seventy-five barrels of corn, of the value of one hundred and fifty dollars, and that Brown gave a writing to return this note for the corn if the sixty dollars were paid at the end of •the year; had Heard so stated his case, and proved
Petition overruled.
Caperton, for appellant; Crittenden, for appellee. .
it substantially as stated, then Heard’s case with Brown, would have been in principle Tike unto Bush’s case, and ought to have received like remedy. Heard’s bill did not allege the facts which make the constituent parts of an usurious agreement; he stated a fair contract and a pledge for performance by his bill; he attempted to prove it foul; the court declared the contract void, if it were as the proof conduced to show; but that which is not alleged, is not the subject of proof, nor the basis of a decree. But in the case of Bush and Rodes, all the constituent parts of an usurious agreement are set forth by the bill, the proof accords with the bill. According to the principles recognized in Brown vs. Heard, the contract between Rodes and Bush is usurious and void, and Bush is entitled to be relieved as he has asked.
Not disapproving the zeal of counsellors, in advocating the interests of their clients, we have con-sidered the petition presented for a re-hearing, but have discovered in it nothing more than zea}.
The petition is overruled.